# In the United States Court of Federal Claims

No. 10-682C
(Filed December 17, 2010)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| ACROW CORPORATION OF AMERICA,       * | Post-award bid protest, 28 U.S.C. |
| * | § 1491(b)(1) (2006); supplemen- |
| Plaintiff,       * | tation of administrative record |
| * | with documents that protester |
| v.       * | contends contracting officer |
| * | should have considered in |
| THE UNITED STATES,       * | making responsibility determina- |
| * | tion; inclusion of Government |
| Defendant,       * | Accountability Office decision |
| * | and record before the GAO in |
| and       * | the administrative record, 31 |
| * | U.S.C. § 3556 (2006); RCFC |
| MABEY BRIDGE & SHORE, INC.,       * | App. C ¶¶ VII. 22(u), 23. |
| * | |
| Defendant-Intervenor.       * | |
| * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

Thomas A. Coulter, Richmond, VA, for plaintiff.  Nicole Hardin Brakstad, LeClair Ryan, P.C., of counsel.

Lartease M. Tiffith, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant.  Debra J. Talley, Associate Command Counsel, Army Materiel Command, Redstone Arsenal, AL, of counsel.

Elizabeth W. Newsom, Washington, DC, for defendant-intervenor.  David Z. Bodenheimer and Puja Satiani, Crowell & Moring, LLP, of counsel.

**FINAL ORDER AND MEMORANDUM OPINION
ON SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD 1/**

---

1/ The court previously entered speaking orders under seal on November 5, 2010, and November 12, 2010, addressing the same subject matter and affording the parties an opportunity to submit proposed redactions.  Because none were requested, this order is issued without restriction as it does not address any new subject matter not identified in the prior orders.

**MILLER**, Judge.

The parties to a post-award bid protest filed under 28 U.S.C. § 1491(b)(1) (2006), have disputed the contents of the administrative record that properly is before the court. Their disputes concern documents, including affidavits and declarations, not the fruits of depositions or testimony taken in aid of a bid protest. Similar issues have spawned many opinions by the United States Court of Federal Claims. The rules of engagement should be simple, but they are not for two reasons. First, 31 U.S.C. § 3556 (2006), requires that on a bid protest to the Court of Federal Claims a decision of the Office of Government Accountability (the "GAO") "shall be considered to be part of the agency record subject to review." Id. Second, the Rules of the United States Court of Federal Claims contemplate that "the record" before the GAO is filed as a "core document[]" relevant to a protest. See RCFC, App. C, ¶¶ 22(u), 23. 2/ None of these three provisions expands or restricts the type of documents that a protestor, awardee or putative awardee, or the Government can bring before the court: 1) documents that the contracting officer considered in reaching his decision; 2) documents existing at the time of the decision that the contracting officer, given the matters that he addressed, should have considered in reaching his decision; and 3) documents referring to facts existing at the time of the contracting officer's decision that show that the contracting officer's decision was biased, tainted, or affected by a conflict of interest. The documents that properly supplement the administrative record are those that fall into categories 1 and 2.

---

2/ RCFC App. C, ¶ 22 reads:

Early production of relevant core documents may expedite final resolution of the case. The core documents relevant to a protest case may include, as appropriate,

. . . .

(u) the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement.

RCFC App. C, ¶ 22(u). RCFC App. C, ¶ 23 states, in pertinent part: "[T]he court expects the United States to produce the core documents and the remainder of the administrative record as promptly as circumstances will permit."

Some documents properly "supplement" the administrative record where necessary to ensure meaningful judicial review because they were before the contracting officer, but he failed to consider them, or because documents that the contracting officer did consider were not included in the agency record due to error or oversight.  Other documents that properly "supplement" the administrative record are considered during the protest as documents that supply important information that, typically, fills gaps in the record and is required for meaningful judicial review. Some documents may not qualify as supplementation in that they "do not clarify any matter that was or was not considered at the agency level, as they do not represent information that should have been considered, was considered, was insufficiently considered, or was considered incorrectly."  Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487, 494 & n.9 (2006), aff'd, 492 F.3d 1308 (Fed. Cir. 2007).

The peripheral motions practice concerning supplementation, with its attendant burdens, costs, and delays (and demonstrable likelihood that rulings issue on documents that should not be considered and will not be considered), could be curtailed if the decisional law uniformly recognized 1) that a party to a bid protest in the Court of Federal Claims properly may rely on documents that satisfy any one or more of the three criteria listed above; and 2) the arguments concerning what documents properly may be considered in connection with the bid protest are reserved for resolution with the merits of the motion for preliminary injunction or motion for judgment on the administrative record (ruling on the complaint for permanent injunction).  The court then would be in a more informed position to understand exactly what role the documents should have played in the challenged procurement decision. Such is the case in the instant matter—as more documents trickled into the court record, the court was better able to understand what documents actually were in the administrative record before the contracting officer at the time of her decision.

On December 3, 2010, plaintiff filed Plaintiff's Second Motion To Supplement the Administrative Record and Motion To Clarify or Alter/Amend the Court's Order on Supplementation and Memorandum in Support.  On December 9, 2010, the court entered an order that it would rule on the motion without further briefing on the parties' cross-motions for judgment on the administrative record.  The court's previous speaking orders, entered on November 5 and 12, 2010, insofar as they address the same subject matter 3/ have been

---

3/  The November 5, 2010 order ruled on Defendant's Motion To Strike Complaint Exhibit Nos. 8, 9, 10, 11, 14, 21 and 22 filed on October 23, 2010, and Plaintiff's Response to Government's Motion To Strike Complaint Exhibit Nos. 8, 9, 10, 11, 14, 21, and 22/ Motion To Supplement the Administrative Record and Memorandum in Support filed on October 27, 2010.  The November 12, 2010 order ruled on Defendant's Motion for Leave

incorporated in this order, and the court vacates the former orders and enters this order incorporating and clarifying them, *nunc pro tunc*, in order to advance the interests of coherent jurisprudence.  This order enters on the same date as the court's opinion on the cross-motions, which is based on the record developed by the parties' briefs on the merits.  That opinion more particularly discusses the materiality of the disputed documents.

## FACTS

The following facts represent that state of the record as of November 12, 2010, the date on which briefing was completed on the parties' respective motions regarding supplementation of the administrative record and on which the court entered its second order on supplementation.  The facts relating to plaintiff's December 3, 2010 pending motion to supplement are not restricted to that time frame.  The findings herein do not represent findings of fact on the merits of plaintiff's protest.

Plaintiff protests the award of Solicitation No. W56HZV-09-R-0480 (the "Solicitation") to defendant-intervenor Mabey Bridge & Shore, Inc. ("MBSI"), on the ground that the United States Army TACOM Life Cycle Management Command ("TACOM") improperly determined that MBSI was a responsible offeror.  The Solicitation included a firm, fixed-price five-year requirements contract, with two one-year options, to build a Line of Communication Bridge ("LOCB") system that transports ground forces in the U.S. Army across dry and wet "gaps."  Admin. Rec. ("AR") filed Oct. 19, 2010, at 49.  LOCB systems "ensure support forces are able to move freely and without delay throughout a given theater of operation."  Compl. filed Oct. 8, 2010, ¶ 14.

The Solicitation articulated the method of determining which proposal provided the "best value," stating, in relevant part:

> [T]he Government will evaluate the following factors: Experience, Price, Technical and Small Business Participation.  Experience is equal in importance to Price.  Price is more important than Technical.  Technical is more important than Small Business Participation.  The non-price factors when combined are more important than Price.
>
> . . . .

---

3/  (Cont'd from page 3.)

To File Missing Portions of Administrative Record filed on November 3, 2010.

(a)      [The Government will] award a contract to the offeror that:

(1) . . . provides the best value to the Government if factors in addition to price are identified elsewhere in this solicitation, <u>and</u>

. . . .

(3) meets all the responsibility criteria at FAR 9.104.

AR at 161-62.  The responsibility determination mandated: "Per FAR 9.103, contracts will be placed only with the Contractors that the Contracting Officer determines to be responsible. Prospective Offerors . . . must be able to demonstrate that they meet standards of responsibility set forth in FAR 9.104."  AR at 161.  48 C.F.R. (FAR) § 9.104-1 (2010), lists seven aspects of "responsibility" that a contracting officer should consider in coming to a responsibility determination, among which is the requirement that "a prospective contractor must . . . (d) [h]ave a satisfactory record of integrity and business ethics (for example, see Subpart 42.15)."  <u>Id.</u>

TACOM notified plaintiff of the Solicitation on December 2, 2009, and plaintiff submitted its proposal on January 18, 2010.  MBSI, plaintiff's competitor in the bridge supply industry, was the only other offeror to submit a proposal.  MBSI is related to a now-defunct company, Mabey & Johnson Ltd. ("M&J") in that MBSI and M&J are divisions of Mabey Holdings Ltd., and are part of the Mabey Group of companies based in the United Kingdom.  In 2009 MBSI's subcontractor, Mabey Bridge Ltd. ("MBL") purchased M&J's assets and contracts.  MBL is not only an affiliate, but is also MBSI's prospective manufacturer and subcontractor under MBSI's proposal.

M&J had been the source of recent international controversy.  The contracting officer's letter to MBSI dated March 17, 2010, explained that during her evaluation of the proposals she became aware that M&J had pleaded guilty in the United Kingdom in 2009 to corruption offenses and was sentenced on September 25, 2009, for "corrupt practices in overseas contracts between 1993 and 2001 and also for breaching a United Nations embargo on trade with Iraq during 2001-2002."  AR at 575.  The contracting officer informed MBSI that she would be making a responsibility determination with regard to both MBSI and MBL and sought an explanation from MBSI as to how the charges against M&J would impact her responsibility determination.  AR at 576.

MBSI's response dated March 26, 2010, addressed these concerns, stating, "MBSI has a 21 [sic] year history in the USA of integrity and highest standards of business ethics

unblemished by any suggestion of impropriety." AR at 582. MBSI did disclose that the chairman of MBSI from 1989 to 2008, Charles Forsyth, was the managing director of M&J and "was involved in the wrongdoing [with] M&J." AR at 583. MBSI asserted, however, that, "Mr. Forsyth was not involved in the day-to-day running of MBSI, and no allegations have been made which would suggest that any of Mr. Forsyth's activities at M&J affected MBSI. Neither MBSI nor any of its current officers and directors has ever been charged with any illegal activity." Id. The letter did not mention that a draft counterclaim circulated in related civil litigation in the United Kingdom, which led to the Serious Fraud Office's (the "SFO") formal charges against M&J, named MBSI and its recent president and director, Geoffrey W. Booth, as potentially involved in bribery schemes. See Compl. Ex. 10, at 20.

MBL responded in a separate letter dated March 26, 2010, in which MBL "[wrote] to provide evidence to support a conclusion that [MBL] meets the General Standard outlined in FAR 9.104-1(d)." AR at 584. The letter outlined that, "[i]n early 2008 in the course of High Court proceedings in the UK by [M&J] against an ex-employee, the ex-employee made allegations that corrupt payments had been made by [M&J]." AR at 585.

TACOM notified plaintiff via e-mail on June 8, 2010, that the award would go to MBSI. At the June 16, 2010 oral debriefing requested by plaintiff, TACOM reported: "As part of the responsibility determination process, particular attention was placed on the integrity and business ethics portion of the standards," especially with regard to the M&J fraud litigation. AR at 3349. However, plaintiff and MBSI were rated equivalently in each of the subject areas evaluated under the Solicitation except in price—plaintiff had submitted a proposal to complete the project for $134 million and MBSI's bid was for $109 million. AR at 3324. MBSI ultimately received the award because "[b]oth offerors are essentially equal in Experience, Technical, and Small Business Participation, but the MBSI proposal is significantly lower in Total Evaluated Price than that of Acrow. . . . The MBSI proposal is reasonable, realistic and affordable; and MBSI has been determined to be a responsible contractor." AR at 3365 (Memorandum of Source Selection Decision, dated June 8, 2010).

In her Memorandum for Record (the contracting officer's responsibility determination) dated June 8, 2010, the date of the award, the contracting officer discussed her reasons for determining that MBSI and MBL had "satisfactory records of integrity and business ethics." AR at 545. The contracting officer noted that M&J undertook a "detailed investigation upon an allegation made by an ex-employee that the company had made corrupt payments." AR at 546. After disclosing the matter to the SFO, M&J had pleaded guilty to charges of corrupt practices that led to contracts valued at $100 million between 1993 and 2001 and for violating a United Nations 2001-2002 embargo on trade with Iraq; the company was ordered to pay $10 million in fines. AR at 545-46. The contracting officer's responsibility determination stated that her "extensive internet research did not identify any

incidents, other than the two previously mentioned, that [she] needed to consider."  AR at 545.  She noted that "MBSI was never a party to and has never been alleged to be a party to the events that led to the prosecution of M&J" and that "MBSI has a 21 [sic] year unblemished record in the USA of integrity and high ethical standards."  AR at 546.  The contracting officer's Memorandum for Record did not mention allegations implicating MBSI or MBSI's Mr. Booth.

Plaintiff protested the award before the GAO, but ultimately was unsuccessful.  The GAO determined that "[t]he record . . . shows . . . that the contracting officer was aware of, and considered, available information concerning M&J's 2009 conviction for corrupt practices and MBSI's and MBL's relationship to M&J."  Compl. Ex. 23, at 5.  On October 8, 2010, plaintiff filed the pending protest before the United States Court of Federal Claims.

## DISCUSSION

1. Plaintiff's challenge to the award

Plaintiff protests the award on the ground that the contracting officer did not consider all relevant facts in making her determination that MBSI and MBL were responsible contractors within the meaning of FAR 9.104-1.  Specifically, plaintiff asserts that the contracting officer failed to appreciate fully the scope of M&J and its affiliates' corruption, and charges MBSI directly with that corruption.  The SFO's investigation focused on bribery allegations in Jamaica and Ghana, but M&J's corruption expanded to many countries, including the Phillipines; Papau, New Guinea; Costa Rica; Panama; and the Dominican Republic.  Further, plaintiff asserts that MBSI was involved directly in bribery activities, as recounted in a proposed counterclaim that was forwarded to counsel for M&J in related litigation in the United Kingdom by former employee Jonathan Danos and in direct contradiction to statements made by MBSI.

Plaintiff maintains that the contracting officer did not consider or appreciate fully that "MBSI was engaged in a series of corporate espionage efforts to try to obtain information from plaintiff for use in the procurement at issue," by covertly dispatching an employee to plaintiff's warehouse and by chartering a plane to fly over plaintiff's facility where plaintiff conducted field tests.  According to plaintiff, the contracting officer's search failed to bring to light relevant information regarding these incidents and charges her with a duty to query her colleagues of their knowledge and opinions before making her decision.

2.  Standard for supplementation of the administrative record

The Court of Federal Claims has long held that, "[b]ecause a court reviews an agency decision under the 'arbitrary and capricious' standard set forth in 5 U.S.C. § 706(2)(A), judicial review of agency actions generally is limited to the administrative record."  Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 244 (2001); see also Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  5 U.S.C. § 706(2)(A)(2006), provides that: "The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .".  The United States Court of Appeals for the Federal Circuit reaffirmed this rule in its most recent decision on the issue of supplementing the agency record, Axiom Resource Management, Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court.'" (emphasis omitted) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985))).  The Federal Circuit emphasized in Axiom that the "focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA."  Id. at 1381.

In Axiom the Federal Circuit reversed a judgment enjoining the Government from exercising its option to renew a contract and held that the trial court had abused its discretion by failing to determine that supplementation was necessary before allowing the protestor to supplement the record.  Id.  On appeal defendant contended that the trial court erred by allowing the protestor to supplement the record with extra-record documents (legal pleadings before the GAO and declarations by Axiom employees and consultants) and then by extensively relying on those documents to support its decision.  Id. at 1379.  As discussed by this court in Totolo/King v. United States, 87 Fed. Cl. 680, 692-93 (2009), appeal docketed, No. 2010-5037 (Fed. Cir. Jan. 7, 2010), the Federal Circuit decoupled this "meaningful review" standard, Axiom, 564 F.3d at 1381, from the eight exceptions to the rule restricting review to the record submitted by the agency that are set forth in Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989): "[I]nsofar as Esch [sic] departs from fundamental principles of administrative law as articulated by the Supreme Court in Pitts [sic] and Florida Power & Light, it is not the law of this circuit."  Axiom, 564 F.3d at 1381.

As certain of the Esch exceptions have guided the conduct of bid protests in the Court of Federal Claims since the passage of the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, §12, 110 Stat. 3870, 3875 (codified as amended at 28 U.S.C. § 1491) (calling for the courts to review bid protest actions under section 706 of Title 5 of the

8

Administrative Procedure Act), this court understands that the following exceptions are still viable and that the administrative record may be supplemented:

> (1) when the agency action is not adequately explained in the record before the court;
>
> (2) when the agency failed to consider factors which are relevant to its final decision;
>
> (3) when an agency considered evidence which it failed to include in the record;
>
> . . . .
>
> (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991.

Thus, a bid protest brought in the Court of Federal Claims contemplates that the record before the court may include a limited category of post-final-agency-action submissions. This court therefore does not interpret the guidelines in Axiom to change the trial court's practice, other than to emphasize restraint and adherence to precedent. See Totolo/King, 87 Fed. Cl. at 692-93; see also L-3 Commc'ns Eotech, Inc. v. United States, 87 Fed. Cl. 656, 671 (2009) ("The thrust of the *Axiom* decision . . . is that this court must exercise restraint when considering whether or not to supplement the administrative record in a bid protest.").

### 3. Meaningful review of basis for contracting officer's responsibility determination

#### 1) All documents other than the GAO decision

Resolution of the motions concerning supplementation of the administrative record turns on whether the court is capable of providing meaningful judicial review of the award on the administrative record as it was constituted when the contracting officer rendered her decision, given plaintiff's allegations that the contracting officer failed to consider all relevant information in arriving at her responsibility determination. Specifically, defendant moved to exclude plaintiff's Exhibits 8-11 submitted with its October 8, 2010 complaint from the record on the ground that these documents are cumulative of the information

regarding the M&J fraud prosecution that is included in the administrative record. Def.'s Br. filed Oct. 29, 2010, at 9-12. Defendant articulated the <u>Axiom</u> standard as precluding the court from allowing supplementation of the record because none of the exhibits bridges a "gap in the record" of unconsidered facts. <u>See</u> Def.'s Br. filed Oct. 23, 2010, at 5-8. Moreover, according to defendant, because the contracting officer was not even required to examine issues relating to charges of fraud concerning both MBSI and MBL, plaintiff cannot fault the expansive review that she undertook. <u>See</u> Def.'s Br. filed Oct. 29, 2010, at 13 ("'[T]he contracting officer is the arbiter of what, and how much, information he needs.'" (quoting <u>John C. Grimberg Co. v. United States</u>, 185 F.3d 1297, 1303 (Fed. Cir. 1999))).

Plaintiff's Exhibit 10—a draft counterclaim forwarded to M&J counsel on behalf of former Mabey manager Jonathan Danos—is the linchpin of plaintiff's contention that the record is incapable of providing meaningful judicial review. Plaintiff alleges that the counterclaim contains "information showing a broader corruption scheme than described by MBSI and MBL in their letters . . ." Pl.'s Br. filed Oct. 27, 2010, at 8; <u>see also</u> Compl. Ex 10, at 19-23. The counterclaim recounts draft agreements exchanged between MBSI and Dominican Republic officials, involving Mr. Forsyth, the chairman of MBSI's Board until 2008, that separated a $10 million commission to be paid from $7 million "payable against invoices to be rendered purportedly under the other MBSI Draft Agreements," Compl. Ex 10, at 22-23, to avoid the appearance that the compensation had been "bribery or inducements in connection with the contract," <u>id.</u> at 19 (internal quotation marks omitted). Additionally, the counterclaim suggests that MBSI's president and/or director Mr. Booth, was involved in or aware of bribery activities. <u>See</u> Compl. Ex. 15-18 (designating Mr. Booth as MBSI's "President" and representative in correspondence with plaintiff's President William T. Killeen); Compl. Ex. 12 (suggesting Mr. Booth is a director of MBSI in a Mabey Group organizational chart dated March 2, 2010); Compl. Ex. 10, at 20 (alleging Mr. Booth, "a director of MBSI", to be part of negotiations to structure a commission agreement with Dominican Republic officials so as to avoid suspicion of bribery).

The Danos counterclaim calls into question MBSI's statement in response to the contracting officer's inquiry regarding responsibility that "MBSI was never a party to, and has never been alleged to have been a party to, the practices for which M&J has been prosecuted" and that "no allegations have been made which would suggest that any of Mr. Forsyth's activities at M&J affected MBSI," AR at 582-83, as well as the contracting officer's determination reflecting those statements in her Memorandum for Record, <u>see</u> AR at 546 ("MBSI was never a party to and has never been alleged to be a party to the events that led to the prosecution of M&J."). Given that these statements are facially contradictory—if "practices" is given a broad meaning—and that the contracting officer claimed to have undertaken "an extensive internet search" concerning this type of incident, AR at 545, the record does  display a lacuna on the subject of the contracting officer's consideration of

available information.  See AR at 546 (citing the lack of allegations lodged against MBSI as a "key point[] from the response that [she] received [from MBSI]").  4/

The court departs most sharply from defendant's analysis in its understanding of the impact of the tension between the Danos counterclaim and MBSI's statement that MBSI was never alleged to be a party to M&J's corrupt activities.  Defendant, interestingly, offers no explanation as to why these statements appear to conflict and does not point to any document in the administrative record suggesting that the contracting officer knew that the Danos counterclaim implicated MBSI and Mr. Booth in bribery activities.  Defendant cites the Federal Circuit's seminal opinion in Grimberg for the proposition that courts afford a contracting officer broad discretion in determining the scope of the information that she reviews.  See Def.'s Br. filed Oct. 29, 2010, at 4 (quoting Grimberg, 185 F.3d at 1303, as stating, "[A]lthough the contracting officer is given the discretion to seek additional or clarifying responsibility information . . . he is not obligated to do so.").  Grimberg, however, does not stand for the proposition that a contracting officer can limit the ambit of her review to documents that contain potentially material misstatements when accurate, or clarifying, information is available contemporaneously and from readily available sources.

The United States Department of Agriculture (the "USDA") determined in Grimberg that the plaintiff failed to demonstrate that it met the "'size and complexity' and the 'project management experience' special standards" based on a comparison chart developed by the USDA.  Grimberg, 185 F.3d at 1300.  The plaintiff alleged the USDA acted illegally in not seeking additional information from the plaintiff and offering the plaintiff an opportunity to cure a defective schedule before reaching a determination that it was not responsible.  Id. The court held that, "[a]lthough FAR 9.105-1(a) does require the contracting officer to have, or to obtain, enough information to make a responsibility determination, the contracting officer is the arbiter of what, and how much, information he needs."  Id. at 1303.  Grimberg is distinguishable from and undermines defendant's motion to strike on two grounds.  First, Grimberg must be read in its procedural context: a decision on the merits that discusses a contracting officer's purview in making a responsibility determination and that articulates the discretion afforded to the contracting officer in resolving the issue of whether an agency of the United States acted unreasonably.  Id. ("Of course, courts may review such decisions

---

4/   The court further notes that "[i]t is well-established that a contracting officer should consider disqualifying a proposed contractor if a material misrepresentation is made."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1339 (Fed. Cir. 2001).  While the court is not reaching a decision on that issue, to the extent the Danos counterclaim calls into question representations made to TACOM by MBSI and considered by the contracting officer, the information is necessary for effective judicial review.

by the contracting officer for an abuse of discretion; to the extent that Grimberg makes such an argument, however, we reject it for the reasons already articulated."). Without encroaching on the broad discretion afforded a contracting officer's responsibility determination, the court may supplement the record where necessary to review the contention that the contracting officer did not pursue impeaching material bearing on issues that she deemed important, provided that it was at the time as readily available as the material that she considered. The substantive issue of whether the contracting officer acted arbitrarily and capriciously in making her determination is the subject of the parties' cross-motions on the administrative record and is not resolved at this juncture.

Furthermore, Grimberg teaches that the court should look to the contracting officer's actions to determine "what, and how much, information he needs." Id. In the instant case, the contracting officer exercised her discretion under FAR 9.105-1(a) to "seek additional or clarifying responsibility information from [MBSI]" when she requested MBSI and MBL to submit information regarding the M&J fraud litigation and its impact on her responsibility determination in this case. See id. The contracting officer indicated that a "key point[] from the response that [she] received [from MBSI]" was that "MBSI was never a party to and has never been alleged to be a party to the events that led to the prosecution of M&J." AR at 546. The contracting officer, therefore, not the court, has determined that allegations against MBSI were important to her analysis, and, while the administrative record contains the contracting officer's statement that she was aware of the prosecution that resulted from the allegations in the Danos counterclaim, the "gap in the record" concerns whether, having relied on MBSI's representations, she could, or should, have consulted the Danos counterclaim itself. Cf. Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) (upholding contracting officer's decision where "the record indicates that he at least considered [all the relevant data] in his decision-making process").

While the court must not "substitute its judgment" in favor of de novo review, a reviewing court is charged with ensuring that the contracting officer made a decision grounded in a "rational basis" and without "violat[ing] . . . [the] regulation[s] and procedure[s]" articulated in the FAR so as to render the decision arbitrary and capricious. Savantage Fin. Servs., Inc. v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010) (citations omitted). "[W]ithout an examination of the evidence supporting [the protestor's] position [i.e., the Danos counterclaim], this Court cannot properly assess 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Bannum, Inc. v. United States, 89 Fed. Cl. 184, 188 (2009) (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001)). The court allows Exhibit 10 to supplement the administrative record.

12

Plaintiff's Exhibits 8, 9, and 11 discuss the Danos counterclaim and attest to the availability of information accessible to the contracting officer at the time that she was reviewing the issue, an element in plaintiff's challenge that the contracting officer acted arbitrarily and capriciously.  Exhibit 8 is the transcript of M&J's September 25, 2009 sentencing hearing, in which M&J's attorney explains that, "the case came about, and indeed the company's own internal investigation began, as a result of a legal action brought by the company itself against one of its ex-employees.  The pleadings submitted by the ex-employee alleged a wide spread [sic] practice of corruption on the part of the company in securing its contracts abroad."  See Compl. Ex. 8, at 29.  The referent of "pleadings submitted by the ex-employee" is the Danos counterclaim.  While defendant chides plaintiff for imposing a requirement that the contracting officer "search foreign civil court filings for potentially relevant documents," Def.'s Br. filed Oct. 29, 2010, at 1, the contracting officer stated that she conducted an "extensive internet search" that provided information for her responsibility determination, AR at 545.  The court allows Exhibit 8 to supplement the administrative record.

Exhibits 9 and 11 consist of newspaper articles, each attesting to the Danos counterclaim as part of the M&J litigation.  See Compl. Ex. 9 (David Leigh & Rob Evans, Court battle over secret export commissions claims, The Guardian, Jan. 2, 2008 ("While Danos is making accusations against the company, he himself is being sued by the firm for allegedly pocketing hundreds of thousands of pounds himself in corrupt kickbacks on the deals.")); see id. Ex. 11 (consisting of various news articles).  These exhibits bear on the issue of whether the contracting officer, in her "extensive internet research," AR at 545, could have accessed and reviewed the Danos counterclaim.  The court therefore will allow Exhibits 9 and 11 to supplement the record, only insofar as these documents are relevant to whether the Danos counterclaim was readily accessible, because in this way, the documents do substantiate a "gap in the record."  See Pl.'s Br. filed Oct. 8, 2010, at 17 ("A diligent inquiry of the activities of MBSI would have revealed its direct involvement in the illegal activities of M&J as recently as 2004, as set forth in detail in the filing that led directly to the prosecution of M&J—a filing which is available through a simple internet search.").  With regard to Exhibit 11, the article reprinted on pages 5-15 from The Statesman on September 28, 2009, is proper supplementation.  Other articles included in Exhibit 11 that do not discuss the allegations raised by Mr. Danos are not proper supplementation.

In seeking to supplement the administrative record with Exhibit 14, Declaration of Edward Oakley (undated); Exhibit 21, Declaration of William T. Killeen (undated); and Exhibit 22, Declaration of Eugene Sobecki (undated), plaintiff attempted to bolster its theory that MBSI acted in such an anti-competitive way as to prohibit a finding that it is a responsible contractor.  See Compl. Ex. 14.  Here, plaintiff faces a more daunting task, as these affidavits were "created specifically in regards to [plaintiff's] protest before the

13

[GAO]," Def.'s Br. filed Oct. 23, 2010, at 8, and would not have been available for the contracting officer to consider in arriving at her responsibility determination.  Defendant points to the contracting officer's post-award Statement of Facts submitted in the GAO proceeding that "[plaintiff] incorrectly assert[ed] the Contracting Officer did not review any other documents of MBSI's recent corporate espionage."  Def.'s Br. filed Oct. 29, 2010, at 8 (quoting AR at 6).  The contracting officer assessed letters "dated 30 April, 8 May, 13 May, and 15 June" and "concluded that there was no compromise of competition and that no further action was warranted . . . since this appeared to be a private issue between two companies."  AR at 6.  These letters are included in plaintiff's Exhibits 15, 16, 17, and 18, which, defendant agrees, should be added to the administrative record as "a correction of the administrative record, not a supplementation."  Def.'s Br. filed Oct. 29, 2010, at 1 (emphasis omitted); see Compl. Exs. 15-18.  Defendant also does not dispute the admission of Exhibit 13 to the complaint, a letter from plaintiff to TACOM dated August 17, 2009, as well as two exhibits to plaintiff's brief filed on October 27, 2010: Exhibit 2, the SFO prosecution opening note in the M&J litigation regarding corrupt payments (this statement specifically mentions the Danos counterclaim), and Exhibit 3, the SFO prosecution opening note in M&J litigation regarding the Iraq Oil for Food Programme.  Id.  Accordingly, based on the parties' agreement, these exhibits, Exhibits 13, 15-18 to the complaint and Exhibits 2-3 to plaintiff's brief filed on October 27, 2010, are added to the administrative record.  5/

When the court first considered plaintiff's motion to admit the two SFO opening statements, Plaintiff's Exhibits 2 and 3, plaintiff touted them as documents that the contracting officer reviewed in connection with her post-award Statement of Facts to the GAO.  See Pl.'s Br. filed Oct. 27, 2010, at 13 ("[A]lthough the [contracting officer]'s Statement of Fact[s] references the SFO's 'Opening Statement,'" (AR 5) there are actually two opening statements . . . . The administrative record is not clear as to whether the [contracting officer] reviewed only one or both of the SFO's Opening Statements . . . .").  On this ground, plaintiff requested that the record be supplemented as to these documents and defendant agreed.  Def.'s Br, filed Oct. 29, 2010, at 1.

Apparently, the contracting officer considered the SFO opening statements in connection with drafting her Statement of Facts to the GAO.  Although defendant asserts that the contracting officer is required "by law" to submit a Statement of Facts to the GAO as

---

5/  Plaintiff has since confirmed its position that the contracting officer did not review the letters (Exhibits 15, 16, 17, and 18).  However, as of its October 27, 2010 brief, plaintiff requested that it be permitted to supplement the record with Exhibits 13, 15, 16, 17, and 18 because "the agency considered [this] evidence [and] failed to include [it] in the record." Pl.'s Br. filed Oct. 27, 2010, at 12.

implicit justification for its inclusion in the administrative record, see Def.'s Br. filed Oct. 29, 2010, at 11, this court is of the view generally that, "[i]t would be strange if the Court of Federal Claims would allow supplementation with the type of informal post-hoc statements that the GAO allows.  Materials generated in an administrative protest can always be cited in a judicial proceeding as admissions or inconsistent positions, but they do not 'supplement' the administrative record." Rhinocorps Ltd. Co. v. United States, 87 Fed. Cl. 261, 276 n.18 (2009); see Crassociates, Inc. v. United States, No. 10-339C, 2010 WL 4162118, at *14 (Fed. Cl. Oct. 20, 2010) ("[T]his court would be loath to afford [the contracting officer's post-award statements] any weight in determining whether the agency complied with the FAR."). The court does not consider the contracting officer's Statement of Facts to be part of the administrative record and considers that its pertinence is to gauge the significance of certain inconsistencies. E.g., compare AR at 4 (Statement of Facts, "MBSI itself was never charged as being party to the events that led to the prosecution of M&J." (emphasis added)), with AR at 546 (Memorandum for Record, "MBSI was never a party to and has never been alleged to be a party to the events that led to the prosecution of M&J." (emphasis added)).  The court does not consider the Statement of Facts, nor does the Statement of Facts' discussion of documents that the contracting officer reviewed previously render the Statement of Facts necessary to explain any lack of clarity or "gap" in her decision.

The court's determination on plaintiff's Exhibits 14, 21, and 22 is made easier by the inclusion of Exhibits 13, 15, 16, 17, and 18.  For example, Exhibit 14, the Oakley Declaration, details the alleged visit an employee of MBSI made to one of plaintiff's warehouses. Compl. Ex. 14.  However, this information also is contained in the letters that defendant has agreed to add to the record.  Compare id., with Compl. Ex. 18 (detailing plaintiff's position with regard to a visit made by an MBSI employee).  See Def.'s Br. filed Oct. 29, 2010, at 1.  Exhibit 14 is not required to provide effective judicial review.

Exhibit 21, the first Killeen Declaration (Mr. Killeen is the President of plaintiff), likewise does not add to the meaningful judicial review.  The crux of this exhibit appears to be the contention that Mr. Killeen had conversations with the TACOM official to whom the contracting officer reported concerning correspondence relating to the "MSBI espionage efforts" and news articles and documents discussing the M&J "corruption scheme" and provided him with those documents.  Compl. E. 21, ¶¶ 3-5.  By Exhibit 22, the Sobecki Declaration (Mr. Sobecki is plaintiff's National Sales Manager), plaintiff seeks to introduce evidence of conversations between Mr. Sobecki and TACOM managers on plaintiff's current contract in which the latter expressed concern over the alleged corporate espionage activities of MBSI.  See Compl. Ex. 22, ¶ 3.  As previously explained by this court, "[a] discrete difference exists between adding evidence to the record to aid in the reexamination of the contracting officer's decision and submitting an evidentiary filing that points out to the court whether the contracting officer did or did not do something." Totolo/King, 87 Fed. Cl. at 693

15

n.7. In Totolo/King the court was faced with the latter situation and admitted one affidavit that "suppl[ied] the required factual predicate for a finding that the contracting officer acted arbitrarily or capriciously." Id. The instant case illustrates the former scenario: plaintiff seeks to supplement the record for the purposes of introducing extra-record facts that represent additional support for its allegations that information that should have been delivered to and considered by the contracting officer.

The court is mindful that the "purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.'" Axiom, 564 F.3d at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F.3d 1342 (Fed. Cir. 2005)). Plaintiff would have the court require the contracting officer to have discussed subjects allegedly relevant to her responsibility determination with specific individuals with whom plaintiff had communicated and to include these discussions as part of her consideration. That is not the law or the purpose of this type of review. Defendant is correct that Grimberg reserves to the contracting officer the decision of how much information she needs. See Grimberg, 185 F.3d at 1303 (stating that contracting officer is "not obligated" to seek additional or clarifying responsibility information from contractor). Plaintiff has not justified the addition of the three declarations as necessary to a meaningful review of the responsibility determination in light of plaintiff's allegations.

    2)   The GAO decision

By statute, "any decision or recommendation of the Comptroller General . . . with respect to . . . procurement[s] and proposed procurement[s] shall be considered to be part of the agency record subject to review." 31 U.S.C. § 3556. Appendix C of the RCFC ("Appendix C") VII ¶ 22(u) prescribes that "the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement" is a "core document[] relevant to a protest." The GAO decision therefore must be added to the administrative record. Paragraphs 22(u) and 23 of Appendix C, however, supply a misleading description of what a court should consider in its review and raise more questions than they answer by equating "core documents" to "the remainder of the administrative record." The record under review is the record presented by the agency decisionmaker. It is not the record developed before the GAO. Judicial review is limited to the record actually before the agency. See Rhinocorps, 87 Fed. Cl. at 276 n.18 (citations omitted). The statute cannot be interpreted as opening a back door for considering post hoc rationales proffered to substantiate the particular decisions and actions of the contracting officer on review. The court's rules cannot be applied to engraft onto the contracting officer's decision all the documents that were before the GAO.

16

This position is consistent with <u>Axiom</u> that the record review is "limit[ed] . . . to the record <u>actually before the agency</u>." 564 F.3d at 1380 (emphasis added).  Although <u>Axiom</u> dealt with the issue of record supplementation, as opposed to a question of what documents can be called "core documents" and whether core "documents" are part of the administrative record, the principle of limiting review to the documents and facts before the agency at the time the decision was rendered is consistent with the basic tenet long ago articulated by the United States Supreme Court that "<u>post hoc</u> rationalizations offered by the agency should be afforded limited importance in the court's analysis."  <u>Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States</u>, 56 Fed. Cl. 502, 508 (2003) (citing <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 419 (1971), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977)).  Indeed, "[o]ther courts conducting [Administrative Procedure Act] reviews have limited their consideration of an agency's decision to the analysis and rationale appearing in the administrative record <u>as of the time of the decision</u>, holding that '[a]ny <u>post hoc</u> rationales an agency provides for its decision are not to be considered.'"  <u>Crassociates</u>, 2010 WL 4162118, at *14 (emphasis added) (quoting <u>Gen. Elec. Co. v. Dep't of Air Force</u>, 648 F. Supp. 2d 95, 100 (D.D.C. 2009)).

One explanation for the statutory requirement that the GAO decision be included as part of the agency action subject to review is that Congress was prescient that a GAO decision might shed light on what documents or other written information should have been considered by the contracting officer.  However, insofar as the GAO proceedings consider post-decision (unsworn) statements by the contracting officer, they do not expand judicial review to the record before the GAO, nor do they transform the GAO's decision into the agency decision that the court is reviewing for reasonableness.

Reading Appendix C in light of the decisional law substantiates that paragraphs 22(u) and 23 are procedural rules, not ones that necessarily bear on the substance of the issues or weight afforded to the opinions articulated in the GAO decision.  The court, however, is capable of taking judicial notice of the GAO decision without straying from <u>Axiom</u>'s boundaries.  <u>See</u> <u>Ala. Aircraft Indus., Inc.-Birmingham v. United States</u>, 82 Fed. Cl. 757, 765 (2008) (taking judicial notice of GAO's decision).  The pertinence of any explanation adopted in the GAO decision will depend on whether the explanation was given to provide a rationale for a gap or inconsistency in the responsibility determination, or whether the contracting officer later considered other information or alternative reasons to reinforce and justify her responsibility determination before the GAO.  Insofar as the later is the case, the contracting officer's Statement of Facts will not be considered by this court.

17

4.  <u>Amendment of rulings</u>

By Plaintiff's Second Motion To Supplement the Administrative Record and Motion To Clarify or Alter/Amend the Court's Order on Supplementation and Memorandum in Support filed on December 3, 2010, plaintiff sought to revisit the court's orders entered on November 5 and 12, 2010.  Previously, plaintiff attempted to clarify its position with regard to the letters exchanged between plaintiff and MBSI (Exhibits 15, 16, 17 and 18 to the complaint) in its brief filed on November 5, 2010, that "because the [Procurement Contracting Officer (the "PCO")] asserted that she reviewed those letters, they should be made a part of the administrative record, but that [plaintiff] reserved the right to argue whether she did, in fact, review those letters.  [Plaintiff] clearly does not agree that the PCO reviewed those letters . . . ."  Pl.'s Br. filed Nov. 5, 2010, at 2-3.  Plaintiff attached to this brief an e-mail exchanged between plaintiff's counsel and defense counsel as evidence of plaintiff's litigation position.  <u>See</u> <u>id.</u> Pl.'s Br. filed Nov. 5, Ex. A.

In contrast to plaintiff's previously articulated position, <u>see</u> Pl.'s Br. filed Oct. 27, 2010, at 12 ("[W]ith regard to Exhibits 13, 15, 16, 17, and 18 . . . [plaintiff] must be permitted to supplement the record based on the following . . . exception[]: (3) the agency <u>considered</u> evidence it failed to include in the record" (emphasis added)), plaintiff's position is that the contracting officer did not consider these letters.  Plaintiff's December 3, 2010 motion to clarify reinforces that plaintiff is arguing that the contracting officer could have considered these letters, but did not do so.

In its December 3, 2010 motion to supplement, plaintiff seeks to add two declarations of Mr. Killeen submitted as exhibits to plaintiff's briefs on the merits (these were filed subsequent to the complaint and in addition to Mr. Killeen's first declaration, Exhibit 21 to the complaint).  Pl.'s Br. filed Dec. 3, 2010, at 2.  The two documents are the Declaration of William T. Killeen (undated), filed as Exhibit A to plaintiff's brief filed October 29, 2010 (the "Second Killeen Declaration"), and the Declaration of William T. Killeen, dated November 29, 2010, filed as Exhibit B to plaintiff's November 29, 2010 brief (the "November 29 Killeen Declaration").  Both declarations are considered as part of the court record with regard to plaintiff's showing in court for injunctive relief.  Insofar as the Second Killeen Declaration declares that he performed simple web searches in early 2008 to retrieve the Danos counterclaim and that he handed to a senior official referred to in the first Killeen Declaration a copy of the Danos counterclaim in late April 2009, Second Killeen Decl. ¶ 6, the court does not consider that defining scope of an internet search to be germane, nor does receipt of a copy of the Danos counterclaim by the official whom Mr. Killeen believes to be the contracting officer's superior bear on whether the contracting officer should be charged with reviewing it.

18

## CONCLUSION

The court has evaluated the record on the basis of what the contracting officer at the time of her responsibility determination considered and had available for her consideration. Regarding allegations of corruption concerning MBSI, the contracting officer considered some materials, but may have failed to consider putatively impeaching material readily available and accessible at the time.

With regard to plaintiff's allegations of corporate espionage, defendant relies on the contracting officer's post-award Statement of Facts submitted to the GAO to show that she considered an exchange of correspondence between the parties. Plaintiff wants to add more specific information to the letters that the contracting officer referenced in her Statement of Facts and argues that she did not consider the letters or that information. Plaintiff has not made a showing to justify the First Killeen Declaration and the Oakley and Sobecki declarations. To the extent that the Second Killeen Declaration and the November 29 Killeen Declaration speak to plaintiff's showings for injunctive relief, they are considered part of the court record. Accordingly,

**IT IS ORDERED**, as follows:

1. The orders entered on November 5 and 12, 2010, are vacated, and the court grants plaintiff's December 3, 2010 motion to clarify to the extent indicated in the body of this order.

2. Defendant's motion to strike is denied, and plaintiff's motion to supplement is granted, with respect to Exhibits 8, 9, and 10 to the complaint.

3. Defendant's motion to strike is granted with respect to Exhibit 11, excepting the article reprinted on pages 5-15 from The Statesman, as to which it is denied. Defendant's motion to strike is denied as to Exhibits 14, 21, and 22. These three exhibits do not qualify as supplemental and are stricken from the administrative record, although they are part of the court record.

4. The parties agree that the administrative record should be supplemented with Exhibits 13, 15, 16, 17, and 18 to plaintiff's complaint and Exhibits 2 and 3 to plaintiff's brief filed October 27, 2010. Plaintiff's motion regarding these documents is granted.

5. Defendant's motion is granted insofar as the GAO decision is added to the administrative record, and the court takes judicial notice of it.

6.  Plaintiff's motion filed on December 3, 2010, to supplement with respect to  the Second Killeen Declaration and the November 29 Killeen Declaration is granted insofar as these documents discuss the three additional factors relating to injunctive relief, and are part of the court record.  The motion otherwise is denied.


/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge