# In the United States Court of Federal Claims

No. 10-682C
(Filed February 2, 2011) 1/

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                      *
ACROW CORPORATION OF AMERICA,         *    Post-award bid protest; 28 U.S.C.
                                      *    § 1491(b)(1) (2006); responsibility
               Plaintiff,             *    determination, 48 C.F.R. (FAR)
                                      *    § 9.103 (2010);  motion for
       v.                             *    injunction pending appeal,
                                      *    RCFC 62(c).
THE UNITED STATES,                    *
                                      *
               Defendant,             *
                                      *
       and                            *
                                      *
MABEY BRIDGE & SHORE, INC.,           *
                                      *
               Defendant-Intervenor.  *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Thomas A. Coulter, Richmond, VA, for plaintiff. Nicole Hardin Brakstad, LeClair Ryan, PC, of counsel.

Lartease M. Tiffith, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Debra J. Talley, Associate Command Counsel, Army Materiel Command, Redstone Arsenal, AL, of counsel.

Elizabeth W. Newsom, Washington, DC, for defendant-intervenor. David Z. Bodenheimer and Puja Satiani, Crowell & Moring, LLP, of counsel.

**MEMORANDUM OPINION AND ORDER**

**MILLER**, Judge.

---

1/  This opinion originally was filed under seal on January 24, 2011. The parties were requested to notify the court of any redactions. The redactions requested are denoted by brackets.

Before the court is Plaintiff's Motion for Injunction Pending Appeal filed on December 30, 2010. The motion is precipitated by the court's December 17, 2010 opinion denying plaintiff's motion for judgment on the administrative record and granting defendant's and defendant-intervenor, Mabey Bridge and Shore, Inc.'s ("MBSI"), respective cross-motions. Acrow Corp. of Am. v. United States, No. 10-682C, 2011 WL 62118 (Fed. Cl. Dec. 17, 2010), appeal docketed, No. 11-5035 (Fed. Cir. Dec. 28, 2010). After appealing that decision to the United States Court of Appeals for the Federal Circuit on December 23, 2010, Acrow Corporation of America ("plaintiff") sought an injunction pending resolution of its appeal under RCFC 62(c). The court expedited briefing; defendant responded on January 7, 2011, and plaintiff replied on January 14, 2011. MBSI did not respond. Argument is deemed unnecessary.

## DISCUSSION

An injunction pending appeal provided for under RCFC 62(c), like a stay pending appeal, is "an extraordinary remedy." Golden Eagle Refining Co. v. United States, 4 Cl. Ct. 622, 624 (1984) (quoting Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd., 374 F.2d 269, 275 (D.C. Cir. 1966)). The rule provides the United States Court of Federal Claims with the authority to grant an injunction on "terms that secure the opposing party's rights." RCFC 62(c). Guided by the jurisprudence of the Federal Circuit interpreting Fed. R. App. P. 8(a), the court "'assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public.'" Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 513 (Fed. Cir. 1990) (quoting E.I. Dupont de Nemours & Co. v. Phillips Petroleum, 835 F.2d 277, 278 (Fed. Cir. 1987)); see also Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (explaining that under procedural rules of district courts and courts of appeals "factors regulating the issuance of a stay are generally the same"); JWK Int'l Corp. v. United States, 49 Fed. Cl. 364, 366 (2001) (noting there is no "rigid set of rules for determining where a stay is appropriate"; instead, courts "adopt a flexible approach" when balancing factors). The court considers the following factors: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies. Alaska Cent. Express, Inc. v. United States, 51 Fed. Cl. 227, 229 (2001) (citing Standard Havens, 897 F.2d at 512). The court need not give each factor equal weight. Id.

1. Likelihood of success

The court's December 17, 2010 opinion addressed plaintiff's challenge to the United States Army TACOM Life Cycle Management Command's ("TACOM") award to MBSI of

a five-year requirements contract to build Line of Communication Bridge ("LOCB") systems. Plaintiff alleged that TACOM improperly had determined that MBSI was a responsible offeror because MBSI lacked a "satisfactory record of integrity and business ethics," 48 C.F.R. (FAR) § 9.104-1 (2010), thereby rendering the contracting officer's responsibility determination arbitrary and capricious. Plaintiff's allegations stemmed primarily from a criminal proceeding brought in the United Kingdom by the Serious Fraud Office (the "SFO") against MBSI's affiliate and major supplier at the time, Mabey & Johnson Ltd. ("M&J"). M&J pled guilty in September 2009 to corrupt practices for contracts in Jamaica and Ghana, including payment in the form of bribes from 1993 through 2001. The controversy was initiated by a draft counterclaim making allegations about M&J by former Mabey manager Jonathan Danos (the "Danos counterclaim").

Plaintiff alleged that the contracting officer 1) should have been required to review the Danos counterclaim and 2) should have been prohibited from determining MBSI responsible because allegations made in the Danos counterclaim demonstrated that MBSI made a false statement to the contracting officer upon which she relied. Acrow, 2011 WL 62118, at *10. For the reasons set forth in its opinion, the court concluded that plaintiff did not succeed on the merits.

The fluid requirements of Fed. R. App. P. 8(a), however, allow an injunction where the movant "'establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a *substantial case* on the merits,' *provided* the other factors militate in movant's favor." Standard Havens, 897 F.2d at 512 (quoting Hilton, 481 U.S. at 778). "When harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" Id. (quoting Hilton, 481 U.S. at 778); accord Red River Holdings, LLC v. United States, 91 Fed. Cl. 621, 625 (2010). Consequently, if the equities weigh heavily in favor of maintaining the status quo, the court may grant an injunction under RCFC 62(c) when the question raised is novel or close, especially when the case will be returned to the trial court should the movant prevail on appeal. See Standard Havens, 897 F.2d at 513 ("[I]f the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation . . . ." (citing Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953))); see also Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387-88 (7th Cir. 1984) ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."); JWK Int'l, 49 Fed. Cl. at 366 ("The stronger the showing of likelihood of success on the merits, the less heavily the balance of harms need tip in [plaintiff's] favor. Conversely, if the harm factors weigh in [plaintiff's] favor, plaintiff only needs to demonstrate a substantial case on the merits.").

Plaintiff's motion has not raised issues with the opinion that are so novel as to merit the extraordinary remedy of injunctive relief pending appeal. Plaintiff disputes the court's findings that the contracting officer did not rely on inaccurate statements made by MBSI and that the contracting officer reviewed the SFO Opening Note, a document that outlined allegations of bribery against M&J. 2/ Similarly, plaintiff assigns error to the court's conclusion that, although MBSI made an inaccurate statement to the contracting officer, the fact that she did not rely on the statement in making her responsibility determination contradicted a finding that it was arbitrary and capricious. Defendant responds that the record "shows that there was a rational basis for the responsibility determination and that the [contracting officer] acted within her wide discretion." Def.'s Br. filed Jan. 7, 2011, at 6 (emphasis omitted).

Although plaintiff's motion seeks to relitigate several issues that the opinion addressed fully and resolved, the court undertakes, for clarity, to revisit a few of plaintiff's less well-thought-out contentions in its motion. Plaintiff's allegations that "there is little

---

2/ Although plaintiff questions the court's finding that the contracting officer reviewed the SFO Opening Note, Pl.'s Br. filed Jan. 14, 2011, at 4-5, the court detailed in its December 17, 2010 opinion its reasons for finding that she did review the document. See Acrow, 2011 WL 62118, at *2 n.2.

Plaintiff's contention that the court has made contradictory statements regarding the SFO Opening Note is both inaccurate and curious, given that any initial ambiguity regarding this document was created by plaintiff. Plaintiff first introduced both SFO Opening Notes (there were two) as exhibits to its response to defendant's motion to strike, stating that "the [contracting officer's] Statement of Fact[s] references the SFO's 'Opening Statement.'" Pl.'s Br. filed Oct. 27, 2010, at 13. Plaintiff sought to supplement the record with both SFO Opening Notes because which document she considered was an open issue. Id. Defendant agreed that they should be admitted. Based on the parties' agreement, the court allowed the documents to supplement the record. In its transition to discussing the relevance to the case of the Statement of Facts submitted to the Government Accountability Office ("GAO"), the court stated that the contracting officer apparently had considered the SFO Opening Notes in connection with drafting her Statement of Facts to the GAO. Acrow Corp. of Am. v. United States, 10-682C, 2010 WL 5153440, at *11 (Fed. Cl. Dec. 17, 2010) (order supplementing the administrative record). The court discussed the relevance of the Statement of Facts. This discussion was not a finding that precluded defendant from showing, during briefing on the merits, that the contracting officer relied on the SFO Opening Note earlier in reaching her responsibility determination, because this was the issue regarding which plaintiff requested that both documents be admitted. The court resolved the issue in its December 17, 2010 merits opinion, finding that the contracting officer did consider the SFO Opening Note. Acrow, 2011 WL 62118, at *2 n.2.

4

evidence in the record," to support a responsibility determination ignores the list of other considerations in MBSI's favor contained in the contracting officer's Memorandum for Record, upon which the court relied, and plaintiff's contention that the court "does not set forth the proper legal standard" ignores the established jurisprudence on this issue. See Pl.'s Br. filed Jan. 14, 2011, at 3.

### 1) Evidence to support a responsibility determination

Plaintiff's challenge to the court's determination that the contracting officer did not rely on inaccurate statements made by MBSI is semantic: "[T]he Court has ascribed meaning to the [contracting officer's] word choice that is not supported by the record, and has imputed logic . . . where none exists." Pl.'s Br. filed Dec. 30, 2010, at 7. The statement the court found to be inaccurate appears in MBSI's response to an inquiry made by the contracting officer. In a letter dated March 17, 2010, to MBSI, the contracting officer invited MBSI to provide her with evidence that both MBSI and Mabey Bridge Ltd. ("MBL"), successor to M&J's assets and contracts, met the standards for a "satisfactory record of integrity and business ethics" under FAR 9.104-1(d). Acrow, 2011 WL 62118, at *4 (quoting Administrative Record ("AR") at 576). In its March 26, 2010 response, MBSI stated that "[i]t is important to note that MBSI was never party to, and has never been alleged to have been a party to, the practices for which M&J has been prosecuted." Id. (quoting AR at 582). The court found this statement to be inaccurate, because the Danos counterclaim alleged that MBSI and MBSI's director and president were involved in an unconsummated deal that was structured to obviate a law against corrupt practices by paying a smaller commission fee than was actually paid. Id. at *14. This was the same type of transaction that the Danos counterclaim alleged had taken place in Jamaica and Ghana, for which M&J was prosecuted. The accuracy of this allegation was not at issue—the mere allegation was enough to render MBSI's statement inaccurate. However, the court found that the contracting officer did not rely on MBSI's inaccurate statement in rendering her responsibility determination because she narrowed her scope of concern in her Memorandum for Record, stating that "MBSI has never been alleged to be a party to the events that led to the prosecution of M&J." Id. at *15 (quoting AR at 546). The contracting officer "made clear that she was basing her assessment on the fact that MBSI was not alleged to be party to the specific events in Jamaica and Ghana that led to M&J's prosecution, not the 'practices' that led to the prosecution." Id.

Plaintiff contends that the court incorrectly ascribed limiting effect to the contracting officer's use of the phraseology "events that led to the prosecution of M&J," as opposed to "practices for which M&J has been prosecuted," in that the contracting officer merely was paraphrasing the information provided by MBSI; plaintiff also asserts that the record reveals no indication that the contracting officer changed her scope of concern when she used the word "events" instead of "practices." Pl.'s Br. filed Dec. 30, 2010, at 10. The court disagrees. The court is bound to accept at face value the words used by contracting officer,

and an alteration to language that was lifted from MBSI's March 26, 2010 letter response signifies that the contracting officer did not parrot MBSI's inaccurate statement.

Plaintiff attempts to label additional statements in MBSI's response as inaccurate and hones in on the court's "fail[ure]" to address the contracting officer's "reliance" on the statement that "MBSI has a 21 year history in the USA of integrity and the highest standards of business ethics unblemished by any suggestion of impropriety." Pl.'s Br. filed Dec. 30, 2010, at 12 (quoting AR at 582). However, as defendant comments, plaintiff overlooks the limiting phrase "in the USA," and the Danos counterclaim does not call into question MBSI's record of integrity in the United States. Def.'s Br. filed Jan. 7, 2011, at 8. The activities involving MBSI discussed in the Danos counterclaim relate to contracts in the Dominican Republic. 3/ MBSI is a United States corporation that manages contracts for its parent that involve construction of bridges in the United Kingdom. It is no secret that MBSI facilitates the Mabey Group's "presence" in the United States.

Contrary to plaintiff's assertion that the court's opinion is based "on assumptions as to the basis for the [contracting officer's] responsibility determination that the record does not conclusively support," Pl.'s Br. filed Dec. 30, 2010, at 10, the court based its opinion on the contracting officer's Memorandum for Record that listed reasons for her determination. She stated that MBSI had never been alleged to be party to the "events that led to the prosecution of M&J." Acrow, 2011 WL 62118, at *15. Whether MBSI's statement concerning its involvement in suspect practices is accurate, plaintiff has not identified any allegation that MBSI had any involvement in the specific events in Jamaica and Ghana that caused the SFO to prosecute M&J. Moreover, plaintiff ignores the extensive list of remedial steps taken by M&J, some of which were adopted by MBL, listed in the contracting officer's

---

3/ Plaintiff attempts to exploit a comment by the court during oral argument. The court asked defense counsel whether MBSI, in its response, was saying that in "doing business in the United States [MBSI] has not been tainted with the activities that occurred with M&J in all of its operations elsewhere and therefore we can trust MBSI to watch over the shoulder of its bridge[-]building sub during this contract." Transcript of Proceedings at 51, Acrow Corp. of Am. v. United States, No. 10-682C (Fed. Cl. Dec. 7, 2010) ("Tr."). Plaintiff cites to the transcript as evidence that "the [c]ourt recognized that the import of the [contracting officer's] use of the phrase was meant simply to distinguish its operations from the operations of M&J worldwide." Pl.'s Br. filed Jan. 14, 2011, at 7. Plaintiff misunderstands the purpose of the court's statement. Argument allows the court to query the parties to glean all possible perspectives. The court was not making a finding at oral argument as to MBSI's statement that it had a 21-year unblemished record in the United States. The court's December 17, 2010 opinion contains the court's substantive findings, and plaintiff would do well to remember the inquisitive nature of oral argument, lest courts be chilled into taking on the role of potted plants.

6

Memorandum for Record. The court determined that "the contracting officer considered the allegations of widespread corruption and weighed these concerns against her belief in the company's renascent commitment to reform." Id. at *20.

Plaintiff also contends that "it would have been proper for the Court to require the [contracting officer] to provide a direct answer to the question of whether she relied upon the MBSI misstatements." Pl.'s Br. filed Dec. 30, 2010, at 13; Pl.'s Br. filed Jan. 14, 2011, at 7. Indeed, the evolving refinement of the contracting officer's language between her Memorandum for Record and her later Government Accountability Office ("GAO") Statement of Facts suggests that she may have been straining to distance MBSI from anything that smacks of impropriety. Compare AR at 4 (GAO Statement of Facts) ("MBSI itself was never charged as being party to the events that led to the prosecution of M&J." (emphasis added)), with AR at 546 (Memorandum for Record) ("MBSI was never a party to and has never been alleged to be a party to the events that led to the prosecution of M&J." (emphasis added)). However, plaintiff had the opportunity to seek to depose the contracting officer regarding the ambiguity that the contracting officer herself created by departing from the language in the Memorandum for Record and her choice of words in her Statement of Facts to the GAO to explain the basis for her determination. Plaintiff did not make such a request. Cf. Impresa Construzioni Geom. Domenico Garufi v. United States ("Domenico Garufi"), 238 F.3d 1324, 1330 (Fed. Cir. 2001) (recounting how plaintiff filed several motions for discovery and requested a deposition of contracting officer which Court of Federal Claims denied). Plaintiff's theory—that "[o]nce confronted with that contrary information during the GAO proceeding, [the contracting officer] altered the basis of her responsibility analysis to accommodate the new information," Pl.'s Br. filed Jan. 14, 2011, at 8,—is undeveloped and unsupported by the record made before the trial court. A premium on advocacy exists, and the court does not act as an investigative magistrate. It was plaintiff's responsibility to request discovery of the contracting officer, particularly when the Federal Circuit has cautioned that courts should not "lightly . . . order[]" such discovery. Domenico Garufi, 238 F.3d at 1341. Plaintiff cannot use this motion to relitigate this issue.

The court notes that plaintiff has cavalierly quoted and cited case law throughout this bid protest. Whether this is a result of misunderstanding or over-zealous advocacy, the court is urged to clarify its own record used by plaintiff to assert that the court stated during oral argument that this is the type of novel or close case as to warrant injunctive relief pending appeal. Plaintiff states that the court would have upheld a finding of non-responsibility by the contracting officer and that "she could have gone either way perhaps." Transcript of Proceedings at 26, Acrow Corp. of Am. v. United States, No. 10-682C (Fed. Cl. Dec. 7, 2010) ("Tr."). This does not make the court's decision close, particularly given the wide discretion afforded the contracting officer. As the court stated: "This was her's to call." Tr. at 102. Plaintiff states that the court "suggested that a review of the [contracting officer's] decision by superiors might be appropriate." Pl.'s Br. filed Jan. 14, 2011, at 13 (citing Tr.

7

at 59-60). During argument the court explored with the parties options for resolving the protest. While the court acknowledged that "this was not [an agency] record to be proud of," the court was clear that its role was not to substitute a different degree of comfort with the record for that of the contracting officer. Tr. at 94. The court opined that some of the facts might give TACOM some pause, but noted that the contracting officer's "level of satisfaction is not [the court's] to displace," Tr. at 104, because "she is entitled, absent a misrepresentation on which she relies, to make her decision within the parameters she has established." Tr. at 100. In observing that plaintiff could appeal to the Federal Circuit, as the plaintiff in the Domenico Garufi case, the court emphasized that it "must observe limits [of the law]." Tr. at 100. Plaintiff confuses a "close call" of the agency decision with the case law governing judicial review. 4/

    2) <u>Correct legal standard</u>

Plaintiff contends that the court did not apply the correct legal standard in its December 17, 2010 opinion and that "the court did not address the standard articulated by [plaintiff]." Pl.'s Br. filed Jan. 14, 2011, at 8. Plaintiff's refrain is that courts apply a heightened standard for responsibility determinations in the face of known criminal activity, "requiring more effort to proclaim a contractor responsible when there is evidence suggesting a contrary finding." Pl.'s Br. filed Dec. 30, 2010, at 20. Plaintiff cites <u>OSG Product Tankers LLC v. United States</u>, 82 Fed. Cl. 570 (2008); <u>Watts-Healy Tibbits, A JV v. United States</u>, 82 Fed. Cl. 614 (order entering preliminary injunction), <u>modified</u>, 82 Fed. Cl. 603 (2008); <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 52 Fed. Cl. 421 (2002); and <u>Southwestern Bell Telephone Co.</u>, B-292476, 2003 WL 22380947 (Comp. Gen. Oct. 1, 2003). The court examined and distinguished each of these cases in its December 17, 2010 opinion, particularly in light of whether the contracting officer should have investigated further the text of the Danos counterclaim. <u>Acrow</u>, 2011 WL 62118, at *16-21. The court found that the contracting officer was not required to read the text of the Danos counterclaim and that her investigation based on the prosecution's summary in the SFO Opening Note was sufficient. <u>Id.</u> at *19.

Plaintiff now cites <u>Diversified Maintenance Systems v. United States</u>, 93 Fed. Cl. 794, 802 (2010), for the proposition that, "once the [contracting officer] became aware of MBSI's

---

    <u>4</u>/ Plaintiff seizes on the court's assessment that the case is factually unique in that "the substitute entity for the company convicted of criminal conduct, as opposed to an affiliate, will be participating in the performance of the contract." Pl.'s Br. filed Jan. 14, 2011, at 13. However, the court was explicit in that the court "did not parse out the specific role MBSI took. I wasn't asked to. I don't know if that's [within] my competence." Tr. at 101. Plaintiff cannot seek to relitigate this issue.

inaccurate statements, the fact that those statements were made as part of its effort to establish itself as a responsible offeror should have clearly indicated to the [contracting officer] that MBSI lacked a satisfactory record of integrity and business ethics." Pl.'s Br. filed Dec. 30, 2010, at 19. As defendant points out, the Diversified Maintenance court merely stated that whether a bidder "'misrepresented its principal place of business to SBA on prior . . . contracts [was] relevant to [awardee's] status as a responsible contractor." Def.'s Br. filed Jan. 7, 2011, at 9 (quoting Diversified Maint., 93 Fed. Cl. at 802). Being relevant is not "clearly indicat[ing]" that the awardee "lacked a satisfactory record of integrity and business ethics," as plaintiff suggests. Pl.'s Br. filed Dec. 30, 2010, at 19.

Although plaintiff has not shown either a likelihood of success on the merits or a likelihood of substantial success on the merits on appeal, the court addresses the remaining injunctive factors.

   2. Irreparable harm to plaintiff

Plaintiff insists that it will be immediately and irreparably harmed without an injunction of the award to MBSI because of its lost opportunity to compete in a fair competition. Defendant cites JWK International for the proposition that plaintiff is not harmed because the injunction is pending appeal after judicial review, and, therefore, plaintiff "'has already had an opportunity to compete for the contract and was not successful.'" Def.'s Br. filed Jan. 7, 2011, at 9 (quoting JWK Int'l, 49 Fed. Cl. at 369). Respectfully, the court disagrees. In order to obtain an injunction *pendente lite* before the Federal Circuit, plaintiff must obtain a denial of the requested relief from the trial court. See Fed. R. App. P. 8(a)(1)(A) (providing that a party must move first before district court for stay of judgment or order pending appeal). The case is not fully resolved. Therefore, if an action before the Court of Federal Claims that only allows recovery of "bid preparation costs in a suit for damages, but not loss of anticipated profits," leaves a bid protestor irreparably harmed, Essex Electro Eng'rs, Inc. v. United States, 3 Cl. Ct. 277, 287 (1983), the same harm exists pending resolution of the appeal.

   3. Substantial injury to other parties

Arguing that other parties will not be harmed by an injunction, plaintiff points out that MBSI will be compensated for any performance costs it incurred prior to termination under FAR 52.249-2(g) (2010) (setting forth method for determining amounts to be paid in contract terminated by Government for convenience if disputed). The only cost that MBSI will bear, plaintiff asserts, is lost profits, an entitlement it is not owed if MBSI is held to be non-responsible. Pl.'s Br. filed Dec. 30, 2010, at 26.

The parties diverge on whether the Government will be harmed by an injunction. Both parties rely on declarations offered during the bid protest that the court already considered, and from which the court concluded that plaintiff would have prevailed under an analysis of whether a national security public interest would be at risk should an injunction issue. Acrow, 2011 WL 62118, at *23 (citing Declaration of David W. Marck, Nov. 5, 2010, ¶ 8 ("Marck Decl. I")).

In response to plaintiff's initial motion, defendant asserts, "[A]n injunction would [deleted]." Def.'s Br. filed Jan. 7, 2011, at 10. However, Mr. Marck's declarations asserted that plaintiff's bridges [deleted]. Declaration of David W. Marck, Dec. 2, 2010, ¶ 3 ("Marck Decl. II"). Defendant represented that the Army will use LOCB systems in conjunction with its Multi Role Bridge Companies ("MRBC") units, and [deleted]. Marck Decl. I ¶ 6 (emphasis added). The bridges produced under the instant procurement for use by MRBC units will be "standing operational asset[s] of the unit for use and availability with regard to any unit deployment and mission." Marck Decl. II ¶ 3. Defendant's lack of consistent position casts doubt as to whether an injunction would impair a tangible national security interest.

Defendant makes the legitimate point that, in balancing the equities, the prevailing parties now have an interest in moving forward with the procurement. In the battle of declarations, the parties disagree as to whether the bridges currently produced by plaintiff could provide a substitute should plaintiff ultimately win the award. Defendant, through Mr. Marck, asserts that plaintiff's bridges would not be useful for the instant procurement because of established restrictions on their use and because the testing for the instant procurement is more rigorous. Marck Decl. II ¶ 2. Relying on a declaration from William T. Killeen, plaintiff's President, plaintiff asserts that, if the Army would do away with the requirement to retest plaintiff's existing bridges that passed testing performed in 2009, use of plaintiff's bridges would accelerate the testing schedule. Pl.'s Br. filed Dec. 30, 2010, at 24 (citing Declaration of William T. Killeen, Nov. 29, 2010, ¶¶ 14, 16, 19-20). The court is not in a position to displace the judgment of the cognizant Army official about mandatory testing requirements for the procurement, and plaintiff's contention that its bridges need not run the gauntlet of the Army's current testing requirements because of plaintiff's "experience with those tests for other customers," id., is absurd.

Even should the court entertain plaintiff's argument that currently it is ready to meet the Army's needs and, in fact, is capable of accelerating the testing process, plaintiff's contention undercuts its position that it would be harmed without an injunction. Indeed, the risk that plaintiff's currently produced bridges do not meet the Government's needs in the procurement, as Mr. Marck states, is a harm that weighs in favor of the Government, regardless of whether the issue bears on national security. Therefore, even though the Government did not demonstrate an exigent national security interest should an injunction

be issued, it certainly would bear the consequences of delayed testing relating to a bid protest on which it has prevailed.

    4. Public interest

Defendant effectively advocates that there is "'a substantial public interest in allowing the government to proceed with contracts awarded [. . .] to the contractor offering the best value.'" Def.'s Br. filed Jan. 7, 2011, at 11 (alteration in original) (quoting JWK Int'l, 49 Fed. Cl. at 370). Although plaintiff argues that "'there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations,'" Pl.'s Br. filed Dec. 30, 2010, at 27 (quoting Labat-Anderson, Inc. v. United States, 65 Fed. Cl. 570, 581 (2005)), the court ultimately concluded that the contracting officer did not act irrationally in determining MBSI was a responsible offeror and that, as such, no violation was substantiated. The public interest would not be served by granting the injunction *pendente lite*.

## CONCLUSION

The balance of factors weighs heavily in favor of defendant and MBSI. Plaintiff did not succeed on the merits in its motion for judgment on the administrative record, and it has not shown even a substantial case for success on the merits on appeal. While plaintiff has suffered irreparable harm, the court cannot credit the confidence expressed by plaintiff's president over the cognizant procurement official's recitation of mandatory testing protocols. The public interest would not be served by granting an injunction pending appeal.

Accordingly, based on the foregoing, plaintiff's motion is denied. By January 31, 2011, the parties shall identify by brackets any material subject to redaction before the opinion issues for publication.

**IT IS SO ORDERED**.

                              /s/ Christine O.C. Miller
                              _____
                              **Christine Odell Cook Miller**
                              Judge